### UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF LOUISIANA

RANDY HUGHES #117275                                    CIVIL ACTION

VERSUS                                                 NO. 12-2841

TIM KEITH, WARDEN                                      SECTION "J"(5)

### REPORT AND RECOMMENDATION

This matter was referred to the undersigned United States Magistrate Judge to conduct hearings, including an evidentiary hearing if necessary, and to submit proposed findings and recommendations for disposition pursuant to 28 U.S.C. §§ 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases. Upon review of the entire record, the Court finds that a federal evidentiary hearing is unnecessary. See 28 U.S.C. §2254(e)(2).[1] For the following reasons, the Court recommends that the instant petition for habeas corpus relief be **DISMISSED WITH PREJUDICE.**

---

[1] Under 28 U.S.C. §2254(e)(2), whether to hold an evidentiary hearing is a statutorily mandated determination. Section 2254(e)(2) authorizes the district court to hold an evidentiary hearing only when the petitioner has shown either that the claim relies on a new, retroactive rule of constitutional law that was previously unavailable, 28 U.S.C. §2254(e)(2)(A)(i), or the claim relies on a factual basis that could not have been previously discovered by exercise of due diligence, 28 U.S.C. §2254(e)(2)(A)(ii); and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner. 28 U.S.C. §2254(e)(2)(B).

## I.   __PROCEDURAL BACKGROUND__

The petitioner, Randy Hughes, is a convicted inmate incarcerated in the Winn Correctional Center in Winnfield, Louisiana.[2]  On March 17, 2008, Hughes was charged by bill of information with one count of attempted distribution of cocaine in violation of LSA-R.S. 40:979/967(A) and one count of possession of cocaine in violation of LSA-R.S. 40:967(C).[3]  On February 4, 2010, Hughes appeared with retained counsel and entered a plea of guilty as charged to both counts.[4]  Prior to entering said plea, the court informed Hughes that he would be sentenced to fifteen (15) years for the attempted distribution of cocaine charge and five (5) years on the count of possession of cocaine, each sentence to run concurrently.[5]  Pursuant to the plea agreement, Hughes also stipulated to being a fourth felony offender in exchange for the

---

[2]Rec. Doc. No. 1.

[3]State Rec. vol. 1 of 2; Bill of information, Case No. 08-1437, Div. "M", 24th Judicial District Court, Parish of Jefferson, Louisiana.

[4]Hughes actually pled guilty in three felony cases and one misdemeanor case at the same time but, based upon his memorandum of law, appears to be challenging only the charges in Case No. 08-1437 in this federal habeas. His federal petition, however, lists all four cases on the first page of the form.

[5]State Rec. vol. 1 of 2, Tab 5, Transcript of Guilty Plea Proceedings at pp. 10-11.

mandatory minimum sentence of twenty (20) years at hard labor without benefit of parole, probation or suspension of sentence.[6]

On February 28, 2010, Hughes filed a "Motion to Retract (Withdraw) Plea of Guilty" with the state district court, arguing that his attorney did not properly inform him of the terms of his guilty plea and that he was given a lengthier sentence than he was offered during the plea bargain negotiations.  The motion was denied on the merits on March 23, 2010.[7]

Hughes did not file an appeal.  Instead he next filed a uniform application for state post-conviction relief on or about January 31, 2011.[8]  Therein, he raised the following claims: (1)counsel failed to advise him of his right to enter an Alford[9] plea despite his protestations of innocence;(2) the trial court and

_____

[6]State Rec. vol. 1 of 2, Tab 5, Transcript of Guilty Plea Proceedings at p. 22.

[7]State Rec. vol. 1 of 2, Tab 1, Motion and Trial Court Order.

[8]The application was signed and notarized on January 31, 2011 and filed in the state district court on February 4, 2011. State Rec. vol. 1 of 2, Tab 4. Louisiana applies a mailbox rule for filings by pro se prisoners, deeming a pleading filed when the prisoner gives it to prison authorities for filing, i.e., generally the date when the petition is signed and dated. Richards v. Thaler, 710 F.3d 573, 577 (5th Cir. 2013) (citing Causey v. Cain, 450 F.3d 601, 606-07 (5th Cir. 2006). Thus the court deems January 31, 2011 to be Hughes' filing date.

[9]See North Carolina v. Alford, 400 U.S. 25 (1970), where the U.S. Supreme Court ruled that a plea of guilty could be accepted even when the defendant asserts his innocence if the defendant intelligently concludes that it is in his best interests to enter a guilty plea and the record before the judge contains strong evidence of actual guilt.

3

defense counsel allowed the petitioner to incriminate himself during the habitual offender proceedings before being advised of his right to remain silent; (3) defense counsel failed to file a motion to quash the multiple offender bill which resulted in "a double enhanced penalty" for Hughes; and,(4) counsel failed to challenge the expiration of the ten year period used to link the prior 1987 conviction to the chain of offenses for the habitual offender conviction.[10] The state district court denied the petition on February 10, 2011 and set a return date of April 29, 2011 for filing supervisory writs.[11]

Hughes subsequently timely filed a writ application with the Louisiana Fifth Circuit Court of Appeal, Writ No. 11-KH-457, dated April 20, 2011.[12] Therein, he raised the following claims: (1) that the trial court abused its discretion by invoking the procedural default bars of LSA-C.Cr. P. art. 930.4(B) and (C); (2) that petitioner was denied procedural due process when the trial court applied the procedural default bar without allowing him a chance to respond pursuant to LSA-C.Cr. P. art. 930.4 (F); and (3) that the trial court's ruling denying petitioner's post-conviction claims was erroneous and arbitrary due to the "summary disposition"

---

[10]State Rec. vol. 1 of 2, Tab 4.

[11]State Rec. vol. 1 of 2, Tab 6, Trial Court Order of 3/31/11.

[12]State Rec. vol. 2 of 2, Tab 14.

4

rendered.[13] The Louisiana Fifth Circuit Court of Appeal found that the trial court erred in not requiring a response from the State, including procedural objections, granted the writ and remanded the matter to the district court on June 1st, 2011 "for consideration of relator's claim in accordance with LSA-C.Cr. P. art. 927 and LSA-C.Cr. P. art 929."[14]

On remand, the State filed its response and the state district court again denied relief on October 13, 2011.[15] The district court specifically barred petitioner's claims under the provisions of 930.4(B) and (C),[16] and also barred Hughes' first claim, that counsel failed to advise petitioner of his right to enter an Alford plea, as successive under LSA-C.Cr.P. art. 930.4(E).[17] The court, alternatively, rejected Hughes' claim that his attorney had rendered ineffective assistance on the merits. With regard to Hughes' post-conviction challenges that his lawyer was ineffective at his sentencing as a habitual offender, the court found those

---

[13]State Rec. vol. 2 of 2, Tab 14.

[14]State Rec. vol. 1 of 2, Tab 7.

[15]State Rec. vol. 1 of 2, Tab 8, Trial Court Order of 10/13/11.

[16]LSA-C.Cr. P. art. 930.4(B)bars a petitioner from raising a claim on post-conviction that he could have raised in the proceedings leading to conviction and 930.4(C) bars claims raised in post-conviction proceedings that could have been raised on appeal.

[17]LSA-C.Cr.P. art. 930.4(E) provides: "A successive application may be dismissed if it raises a new or different claim that was inexcusably omitted from a prior application."

claims barred pursuant to LSA-C.Cr. P. art. 930.3 and State v. Cotton, 25 So.3d 1030 (2010), where the Louisiana Supreme Court ruled that claims of ineffective assistance of counsel at a defendant's habitual offender proceedings are not cognizable on collateral review so long as the resulting sentence falls within the range of sentencing statutorily specified.[18] Hughes then sought a return date for the filing of supervisory writs and was subsequently granted an extension of that return date until February 10, 2012.[19]

In a pro se filing that was postmarked on February 6, 2012, Hughes again filed for supervisory writs with the Louisiana Fifth Circuit Court of Appeal. Therein, he asserted several procedural objections to the district court's denial of relief, specifically: (1)the trial court denied him procedural due process by failing to give him notice and an opportunity to explain with the aid of counsel before the court barred his claims pursuant to LSA-C.Cr.P. art. 930.4(F); (2) the trial court denied him due process by "coupling" his Motion to Retract Plea of Guilty with his Application for Post Conviction Relief when applying the procedural default bar; (3) the trial court denied him due process when the court denied Hughes' post-conviction application and Motion for

---

[18]State Rec. vol. 1 of 2, Tab 8, Trial Court's Order of 10/13/11.

[19]State Rec. vol. 1 of 2, Tab 10.

Preliminary Default; (4) that the trial court denied him due process in erroneously applying the procedural default bars of LSA-C.Cr. P. art. 930.4(B) and (C); and the court rendered a "boilerplate" denial rather than addressing each individual claim.[20] The Louisiana Fifth Circuit Court of Appeal denied relief in a written decision dated March 15, 2012.[21]

With the assistance of counsel, Hughes filed an application for supervisory writs with the Louisiana Supreme Court on April 17, 2012.[22] Therein, he raised the following claims: (1)counsel failed to advise him of his right to enter an Alford plea;(2) his Fifth, Sixth and Fourteenth Amendment rights were violated when he was not advised of his rights under the habitual offender law, specifically LSA-R.S. 15:529.1(D); (3) trial counsel failed to file a motion to quash the multiple offender bill, which resulted in "a double enhanced penalty";(4) trial counsel failed to challenge proof that the ten year cleansing period, linking his prior 1987 conviction in multiple offender proceedings, had expired;(5)the trial court erred in finding his claims procedurally barred and in denying his claims without affording the opportunity to explain his failure under La.C.Cr.P. art. 930.4(F); and, (6) the trial court erred in finding

---

[20]State Rec. vol. 2 of 2, Tab 15.

[21]State Rec. vol. 1 of 2, Tab 11.

[22]State Rec. vol. 1 of 2, Tab 12, Letter dated 4/17/12 from Louisiana Supreme Court.

his claims of ineffective assistance of counsel in the multiple bill proceedings to be procedurally barred as non-cognizable claims.[23] On September 14, 2012, Hughes' application was denied.[24]

On November 19, 2012, Hughes signed, dated and tendered the instant federal habeas application to his prison custodian for filing in the U.S. District Court, Western District of Louisiana. That court, recognizing that petitioner was convicted in Jefferson Parish, Louisiana, transferred the petition to this court pursuant to 28 U.S.C. §1404(a).[25] The claims raised in Hughes' federal habeas are as follows:(1)he was denied his Sixth Amendment right to effective assistance of counsel where counsel failed to advise him of his right to enter an Alford plea;(2) he was denied his Fifth, Sixth and Fourteenth Amendment rights when he was not advised of his rights under LSA-R.S. 15:529.1(D), Louisiana's habitual offender law; (3) he received ineffective assistance of counsel because trial counsel failed to file a motion to quash the multiple offender bill, resulting in a double enhanced penalty, and did not challenge proof of the ten year cleansing period, linking his prior 1987 conviction in multiple offender proceedings; and, (4) his Fifth Amendment right to due process was violated by the trial

---

[23]State Rec. vol. 2 of 2, Tab 16.

[24]State Rec. vol. 1 of 2, Tab 13; Hughes v. Keith, Warden, 97 So.3d 381 (La. 9/14/12)(Writ No. 2012-KP-0854).

[25]Rec. Doc. No. 3.

8

court finding his post-conviction claims for relief to be procedurally barred under state law and non-cognizable.

## II.  <u>GENERAL STANDARDS OF REVIEW</u>

The AEDPA comprehensively revised federal habeas corpus legislation, including 28 U.S.C. §2254.  The AEDPA went into effect on April 24, 1996[26] and applies to habeas petitions filed after that date.  <u>Flanagan v. Johnson</u>, 154 F.3d 196, 198 (5th Cir.1998) (citing <u>Lindh v. Murphy</u>, 521 U.S. 320 (1997)).  The AEDPA therefore applies to Hughes' petition.

The threshold questions in habeas review under the amended statute are whether the petition is timely and whether the claims raised by the petitioner were adjudicated on the merits in state court; i.e., the petitioner must have exhausted state court remedies and must not be in "procedural default" on a claim. <u>Nobles v. Johnson</u>, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b)and (c)).

The State admits and the record supports that the instant petition is timely.  However, the State asserts that Hughes has failed to exhaust the claims which he brings in his federal petition because he failed to raise the same claims at every level of state review.  Specifically, the State argues that Hughes only

---

[26]The AEDPA, which was signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments. Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law.  <u>United States v. Sherrod</u>, 964 F.2d 1501, 1505 (5th Cir. 1992).

presented the Louisiana Court of Appeal Fifth Circuit with issues challenging the state court's application of state procedural bars based upon LSA-C.Cr. P. art. 930.4 (B), (C), (E) and (F) and did not urge his substantive claims of ineffective assistance of counsel, challenges to his multiple bill sentencing or any claim that the state court had improperly applied LSA-C.Cr.P. art. 930.3 to bar his claims.

### A.    Exhaustion

"A fundamental prerequisite to federal habeas relief under §2254 is the exhaustion of all claims in state court prior to requesting federal collateral relief." Whitehead v. Johnson, 157 F.3d 384, 387 (5th Cir. 1998) (citing Rose v. Lundy, 455 U.S. 509, 519-20 (1982)); accord Preiser v. Rodriquez, 411 U.S. 475, 500 (1973); Nobles, 127 F.3d at 419. "A federal habeas petition should be dismissed if state remedies have not been exhausted as to all of the federal court claims." Whitehead, 157 F.3d at 387 (citing 28 U.S.C. §2254(b)(1)(A); Rose, 455 U.S. at 519-20).

"The exhaustion requirement is satisfied when the substance of the federal habeas claim has been fairly presented to the highest state court." Id. (citing Picard v. Connor, 404 U.S. 270 (1971)). More specifically, "[s]tate prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process," including discretionary review when that review is

part of the State's ordinary appellate review procedures. O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999)(emphasis added); accord Woodford v. Ngo, 548 U.S. 81, 92 (2006); Duncan v. Walker, 533 U.S. 167, 177-79 (2001).

To provide the highest state court with the necessary opportunity, the prisoner must thus "fairly present" his claim in each appropriate level of the state court system and must alert the court to the federal nature of the claim. Baldwin v. Reese, 541 U.S. 27, 29 (2004)("the prisoner must fairly present his claim in each appropriate state court to alert that court to the federal claim's nature.") The purpose of this "fair presentation" requirement is to "provide the state courts with a 'fair opportunity to apply controlling legal principles to the facts' bearing upon his constitutional claim." Anderson v. Harless, 459 U.S. 4, 6 (1982) (quoting Picard, 404 U.S. at 276-77). Moreover, "[a] federal court claim must be the "substantial equivalent" of one presented to the state courts if it is to satisfy the 'fairly presented' requirement." Whitehead, 157 F.3d at 387 (citing Picard, 404 U.S. at 275-78). "This requirement is not satisfied if the petitioner presents new legal theories or new factual claims in his federal application." Id. (citing Nobles, 127 F.3d at 420). In sum, to have exhausted his claims in state court, Hughes must have fairly presented the same claims and legal theories he now urges in

11

this federal court to the state courts through <u>each</u> <u>appropriate</u> <u>level</u> of the state review process.

The record shows that the arguments raised before the trial court and the Louisiana Supreme Court are substantially equivalent to the claims raised in this court. However, in Hughes' post-conviction writ to the Louisiana Fifth Circuit Court of Appeal, he did not specifically argue the merits of those claims but instead focused on the alleged procedural "flaws" which existed in the trial court's rulings. For example, Hughes' first claim to the trial court was that counsel was constitutionally deficient in failing to advise him of his right to enter an <u>Alford</u> plea. Before the Louisiana Fifth Circuit Court of Appeal, however, he argued that the trial court erred in denying the claim of ineffective assistance based upon LSA-C.Cr. P. art. 930.4 (B) and (C), i.e., state procedural grounds rather than constitutional grounds. Thus, superficially at least, there is some support for the State's position that petitioner did not raise the same claim which he raises in his federal habeas petition before each level of the state court system.

However, a more exacting review of the writ filed with the Louisiana Fifth Circuit Court of Appeal reveals that Hughes did alert the appellate court to and alternatively argue for, the merits of his substantive claims to be addressed. For example, Hughes noted, on page 4 of his writ application, that the trial

court should have excused him from the procedural bar and considered his claims on the merits. Hughes then argued that, if the appellate court agreed with his objections to the trial court's procedural rulings, the court should remand the matter and order the trial court to "conduct a full evidentiary hearing and allow Mr. Hughes a chance to develop the factual basis for his constitutional claims."[27] Additionally, Hughes attached a copy of his uniform application for post-conviction relief that had been filed in the lower court and requested that, in the alternative, the court should consider the merits of his claims on post-conviction relief.[28] Finally, in ruling on his writ application, the Louisiana Fifth Circuit Court of Appeal seemed well aware of not only the procedural issues being challenged but also the underlying substantive constitutional claims that Hughes was attempting to raise. For example, the appellate court noted, ". . . [R]elator filed an application for post-conviction relief (APCR) alleging he received ineffective assistance of counsel that resulted in his guilty pleas being unknowing and involuntary . . . Thereafter, on

---

[27]State Rec. vol. 2 of 2, Tab 15.

[28]Hughes made this request on three occasions. See Writ No. 12-KH-143 at pages 4, 6, 9 and 10 in State Rec. vol. 2 of 2, Tab 15.

October 13, 2011, the district court denied relator's APCR finding his claims were procedurally barred . . ."(emphasis added).[29]

Based upon the record, this court finds that the issues currently raised in Hughes' federal habeas petition were fairly presented to each level of the appropriate state courts and are fully exhausted.

**B. Procedural Default**

1. Adequate and Independent

In its response, the State also argues that Hughes' claims are procedurally barred from federal review.

"A federal habeas court will not review a claim rejected by a state court 'if the decision of [the state] court rests on a state law ground that is independent of the federal question and adequate to support the judgment.' " Beard v. Kindler, 558 U.S. 53, 55 (2009) (quoting Coleman v. Thompson, 501 U.S. 722, 729 (1991)). See also, Glover v. Cain, 128 F.3d 900, 902 (5th Cir.1997); Amos v. Scott, 61 F.3d 333, 338 & n.10 (5th Cir. 1995). "The state-law ground may be a substantive rule dispositive of the case, or a procedural barrier to adjudication of the claim on the merits." Walker v. Martin, __ U.S. __, 131 S.Ct. 1120, 1127 (2011), citing Wainwright v. Sykes, 433 U.S. 72, 81-82 (1977). Such a procedural bar affects federal review of claims that are raised on either direct or habeas review. Amos, 61 f.3d at 338.

---

[29]State Rec. vol. 1 of 2, Tab 11; Louisiana Fifth Circuit Court of Appeal decision in Writ No. 12-KH-143 at p. 1.

Procedural default does not bar federal court review of a federal claim raised in a habeas petition unless the last state court to render a judgment in the case has "clearly and expressly" indicated that its judgment is independent of federal law and rests on a state procedural bar. <u>Amos</u>, 61 F.3d at 338; <u>Harris V. Reed</u>, 489 U.S. 255, 263 (1989); <u>Glover</u>, 128 F.3d at 902. When the last state court judgment does not indicate whether it is based on procedural default or the merits of a federal claim, the federal court will presume that the state court has relied upon the same grounds as the last reasoned state court opinion. <u>Ylst v. Nunnemaker</u>, 501 U.S. 797, 802 (1991); <u>Steward v. Cain</u>, 259 F.3d 374, 377 (5th Cir. 2001).

In this case, Hughes' first claim for federal relief is that he was denied his Sixth Amendment right to effective assistance of counsel when counsel failed to advise him of his right to enter an <u>Alford</u> plea, thus making his guilty plea involuntary. His second and third claims pertain to alleged defects in his multiple offender sentencing which he claims also resulted from ineffective assistance. His fourth claim challenges the trial court's actions in procedurally barring the other three claims under state law. The Louisiana Supreme Court summarily denied the same claims, relying upon the findings of the appellate court below, i.e., the last reasoned state court opinion.

15

In that opinion, the Louisiana Fifth Circuit Court of Appeal ruled that the state district court was correct in finding Hughes' claim of ineffective assistance with regard to not being informed of the right to an Alford plea to be successive because Hughes had already challenged his guilty plea in his "Motion to Retract (Withdraw) Plea of Guilty" which he had filed on February 28, 2010.[30] The court noted that the district court had properly construed that motion as an initial post-conviction challenge, thus making Hughes' subsequent 2011 post-conviction application successive pursuant to LSA-R.S. 930.4. With regard to Hughes' second and third claims challenging his multiple offender sentencing on the basis of ineffective assistance, the Louisiana Fifth Circuit Court of Appeal found those claims not to be cognizable pursuant to State v. Cotton, 45 So.3d 1030 (La. 2010) and LSA-C.Cr. P. art. 930.3.[31]   The Louisiana Fifth Circuit thus

---

[30]See copy of Louisiana Fifth Circuit decision in State Rec. vol. 1 of 2, Tab 11.

[31]Although the Louisiana Fifth Circuit specifically identified only Cotton and not LSA-C.Cr. P. art. 930.3 as the state procedural bar being applied in Hughes' case, the Cotton case clearly applied LSA-C.Cr. P. art. 930.3 and State ex rel. Melinie v. State,665 So.2d 1172 (La. 1996),when it barred a claim of ineffective assistance rendered during multiple bill proceedings. Melinie, relying upon LSA-C.Cr. P. art. 930.3, has long prohibited post-conviction review of sentencing errors in Louisiana. In Cotton, the Louisiana Supreme Court also prohibited post-conviction review of habitual offender proceedings, including claims of ineffective assistance of counsel during sentencing, excessive sentence and

upheld the trial court's application of state procedural bar, effectively denying Hughes' fourth claim for relief.

Since the Louisiana Fifth Circuit Court of Appeal's ruling "clearly and expressly" indicated that its judgment was independent of federal law and rested on the application of one or more state procedural bars, the "independent" requirement for application of procedural default is satisfied. <u>Amos</u>, 61 F.3d at 338.

In order to qualify as an "adequate" procedural ground, a state rule must be "firmly established and regularly followed." <u>Walker</u>, 131 S.Ct. at 1127, quoting <u>Beard</u>, 558 U.S. at 60-61 (internal quotation marks omitted). State procedural rules enjoy a presumption of adequacy when the State court expressly relies upon them in deciding not to review a claim, and the burden is on the petitioner to demonstrate otherwise. <u>Glover</u>, 128 F.3d 902; <u>Hughes v. Johnson</u>, 191 F.3d 607, 614 (5th Cir. 1999).

Hughes makes no showing that LSA-C.Cr. P. art. 930.4 (successive bar), LSA-C.Cr. P. art. 930.3, <u>Melinie</u> and <u>Cotton</u> (barring post-conviction sentencing review)should not be considered

---

other sentencing errors. <u>Cotton</u>, 45 So.3d at 1030 (citing La. Code Crim. P. art. 930.3 and <u>Melinie</u>, 665 So.2d at 1172). In doing so, the Louisiana Supreme Court specifically distinguished and noted that this post-conviction prohibition did not prevent a defendant from raising the sentencing errors on direct appeal of the sentencing judgment itself, citing La. Code Crim. P. art. 912(C)(1). <u>Id</u>.

adequate state bars to prevent federal review of his claims.  In fact, with regard to the procedural bar set forth in LSA-C.Cr. P. art. 930.4(E), Louisiana courts regularly follow the ban on successive post-conviction applications. See for example, <u>State ex. rel. Maurice O. Brown v. State of Louisiana</u>, 901 So.2d 1090 (La. 2005); <u>State ex rel. James Pendelton v. State of Louisiana</u>, 899 So.2d 562(La. 2005); <u>State ex rel. Kenneth W. Rice v. State of Louisiana</u>,749 So.2d 650 (La.1999). Additionally, the federal courts have found that the state bar against repetitive applications is independent and adequate to bar federal review. <u>See</u> <u>Hawkins v. Miller</u>, 2006 WL 3337503 (E.D.La. Nov.16, 2006) (noting, with regard to an unexhausted claim, that "it appears that petitioner would ... be barred from asserting such a claim in state court," relying upon LSA-C.Cr.P. art. 930.4(E)); <u>Stevenson v. Cain</u>, 2006 WL 2850167 (E.D.La., Oct. 4, 2006) (noting that, because the petitioner failed to present his claim in an initial application for state post-conviction relief, "he would now be barred from so arguing," relying on Article 930.4(E)); <u>Bell v. Baton</u>, 2012 WL 5364239 (M.D.La.,Sept. 24, 2012)(noting that Article 930.4(E) has been found to be an adequate independent state ground for rejecting a petition for post-conviction relief, and the federal courts have relied upon this statute in finding claims to be technically exhausted but procedurally defaulted.)

18

Additionally, with regard to LSA-C.Cr. P. art. 930.3, <u>Melinie</u> and <u>Cotton</u>, this court has recognized that the state courts have consistently applied said bar in its opinions so as to prohibit federal habeas review. See, e.g., <u>Holmes v. Cooper</u>, 2013 WL 694073 (January 22, 2013)(Wilkinson, MJ.), adopted 2013 WL 695352 (E.D.La. Feb 26, 2013)(Vance, J.);<u>Johnson v. Cain</u>, 2012 WL 5363327 (E.D.La. October 30, 2012)(Lemelle, J.); <u>Taylor v. Cain</u>, 2008 WL 4186883 at *16 (E.D.La. Sep. 10, 2008)(Vance, J.); <u>Cotton v. Cooper</u>,2011 WL 5025311, at *7 (E.D.La. Sept. 14, 2011), adopted 2011 WL 5025295 (E.D.La. Oct. 21, 2011) (Africk, J.) (article 930.3 and <u>State ex rel. Melinie</u> are independent and adequate grounds); <u>Richardson v. Cain</u>, 2010 WL 1838642, *11 (E.D.La. Apr. 1, 2010), adopted 2010 WL 1837924 (E.D.La. May 3, 2010) (Vance, J.) (same); <u>Mead v. Cain</u>,2010 WL 3488187, at *3 (E.D.La. Aug. 26, 2010) (Berrigan, J.), <u>aff'd after certif. of appealability grt'd on other grounds</u>, 438 F. App'x. 341 (5th Cir.2011) (citing <u>State ex rel. Brown v. State</u>, 870 So.2d 976, 977 (La.2004)) (because Louisiana Supreme Court in <u>Brown</u> "clarif[ied] that article 930.3 prohibits raising habitual offender sentences in post-conviction hearings," that state procedural ground is independent and adequate to bar habeas claim that counsel was ineffective in connection with a multiple offender adjudication); <u>Neal v. Kaylo</u>,2001 WL 1195879, at *4–5 (E.D.La. Oct. 10, 2001) (Duplantier, J.) (article 930.3 and <u>State ex rel. Melinie</u>

19

are independent and adequate); <u>Leonard v. Hubert</u>, 2001 WL 333123 (E.D.La. Apr. 4, 2001) (Schwartz, J.) (same); <u>Marshall v. Hubert</u>, 2000 WL 1059820 (E.D.La. July 31, 2000) (Duval, J.) (same).

"As a rule, a state prisoner's habeas claims may not be entertained by a federal court when (1) 'a state court [has] declined to address [those] claims because the prisoner had failed to meet a state procedural requirement', and (2) 'the state judgment rests on independent and adequate state procedural grounds.' " <u>Maples v. Thomas</u>, __U.S. __, 132 S.Ct. 912, 922 (2012). Based on the above-noted authority, the court finds that Hughes' claims related to his multiple offender adjudication and deficient representation at the multiple offender proceedings (claims 1-3) cannot be addressed because he has failed to comply with state procedural rules and the state's application of said procedural rules are adequate and independent of federal law. <u>Id</u>.

        2. Cause and Prejudice

A federal habeas petitioner may be excepted from the procedural default rule only if he "can establish cause for the default and actual prejudice as a result of the alleged violation of federal law, or that the failure to consider his claims would result in a fundamental miscarriage of justice because he is 'actually innocent' of the offense underlying his conviction . . ."

Roberts v. Thaler, 681 F.3d 597,604 (5th Cir. 2012)[32](citing Schlup v. Delo, 513 U.S. 298, 326-27 (1995); Sawyer v. Whitley, 505 U.S. 333, 340 (1992); Williams v. Thaler, 602 F.3d 291, 307 (5th Cir. 2010)); accord Finley v. Johnson, 243 F.3d 215, 220 (5th Cir. 2001)(citing Coleman, 501 U.S. at 750; Murray v. Carrier, 477 U.S. 478, 485 (1986)).

"Cause for a procedural default exists where something external to the petitioner, something that cannot fairly be attributed to him[,] ... impeded [his] efforts to comply with the State's procedural rule." Maples, 132 S.Ct. at 922 (citing Coleman, 501 U.S. at 753)(quotation omitted)(emphasis in original); accord Holland v. Anderson, 230 F. App'x. 374, 379 (5th Cir.2007) (citing Bagwell v. Dretke, 372 F.3d 748, 756-57 (5th Cir.2004)). The mere fact that petitioner or his counsel failed to recognize the factual or legal basis for a claim, or failed to raise the claim despite recognizing it, generally does not constitute cause for a procedural default. Murray, 477 U.S. at 486. In most instances, an attorney's negligence in post-conviction proceedings also does not establish "cause" for a petitioner's default. Coleman, 501 U.S. at 725.

---

[32]An exception may also be made if one is "actually innocent" of the death penalty, a claim that does not apply here. Roberts, 681 F.3d at 605.

In this case, Hughes has not offered any "cause" for the default which would excuse the procedural bars imposed by the Louisiana courts. Review of the record does not support a finding that any factor external to the defense prevented Hughes from raising his claim in a procedurally proper manner. The record also does not reflect any action or inaction on the part of the State that prevented him from doing so.

Hughes did file a rebuttal, however, to the State's asserted procedural bar defense.  Therein, Hughes appears to argue that Martinez v. Ryan, __ U.S. __, 132 S.Ct. 1309 (2012) might offer him some relief or escape from the procedural bar.[33] If Hughes can establish that Martinez requires some departure from the rule of Coleman so as to establish "cause" for his default, he must also establish prejudice has resulted. Roberts, 681 F.3d at 604.

Since Hughes did not appeal his conviction or sentence after he rendered his guilty plea, he first raised his claims, including his claims of ineffective assistance of counsel, in post-conviction pleadings. Hughes initially challenged the voluntariness of his guilty plea in a pro se "Motion to Retract (Withdraw) Guilty Plea", construed by the state courts to be an initial post-conviction pleading.  He claimed that his attorney did not inform him of the

---

[33]Hughes does not elaborate as to how Martinez may provide relief. He merely cites to the case and states that his issues of ineffective assistance are "cognizable". See Rec. Doc. 14 at page 6 and 7. Since Hughes is pro se, the court considers Martinez's effect on his petition, if any.

terms of his guilty plea and sentence and this claim was denied by the trial court on the merits. A second challenge to the voluntariness of his guilty plea based upon the claim that Hughes had not been apprised of his rights under Alford was subsequently barred, pursuant to LSA-C.Cr. P. art. 930.4, when Hughes filed a successive post-conviction application.

Liberally construing Hughes' claim that Martinez would provide him with relief essentially amounts to consideration that "cause" exists for his procedural default; i.e., if he had counsel in that first post-conviction proceeding, counsel would have been able to assert the claim that his trial attorney was ineffective for failing to apprise him of his rights under Alford and subsequent default of the claim would have been avoided.

This argument is essentially the argument that was successfully made in Martinez, except that Martinez claimed his counsel negligently failed to bring his ineffective assistance claim in the first post-conviction proceeding, whereas Hughes arguably failed to bring his claims in his initial post-conviction request because he was pro se. In Martinez, the Supreme Court discussed the long-standing holding in Coleman, i.e., that since habeas petitioners have no constitutional right to counsel on post-conviction review, deficient performance by post-conviction counsel does not excuse a procedural default. The Supreme Court carved out a very limited exception to that rule in situations

where a state defendant is procedurally barred from raising an ineffective assistance of trial counsel claim due to either ineffective assistance of counsel or due to a lack of counsel at the initial level of review allowed for raising such a claim.

Martinez set forth the following requirements for finding an exception to excuse a procedural default: (1) the claim of ineffective assistance of trial counsel must be a "substantial" claim; (2)the "cause" consisted of there being "no counsel" or only "ineffective" counsel during the state collateral review proceeding; (3) the state collateral review proceeding was the "initial" review proceeding in respect to the ineffective assistance of trial counsel [claim]; and (4) state law requires that an "ineffective assistance of trial counsel [claim] . . . be raised in an initial review collateral proceeding." Id. at __, 132 S.Ct. at 1318-19, 1320-21 (emphasis provided). The Court defined an "initial-review collateral proceeding" as "the first designated proceeding for a prisoner to raise a claim of ineffective assistance at trial." Id., at 1315, 1317. Martinez resolved that, in states where a claim of ineffective assistance of counsel at trial is prohibited from direct appellate review, the Constitution would require the effective assistance of counsel at the first level of review of that claim on post-conviction before a procedural bar can be imposed by the state courts.   Id., at 1319-20. Finding that Arizona's procedures for raising ineffective assistance of counsel claims required that such claims be raised in

24

post-conviction proceedings rather than on direct appeal, the Court found that the failure of post-conviction counsel to raise the ineffective assistance of trial counsel claim at the first level of review established "cause" for Martinez's procedural default.

The question thus becomes whether Louisiana, like Arizona, bars a defendant from raising his ineffective assistance of counsel claims during direct appeal. Neither the U.S. Supreme Court nor the U.S. Fifth Circuit has ruled on this issue with regard to Louisiana's procedures. However, the issue was raised before the U.S. Supreme Court in <u>Trevino v. Thaler</u>, __U.S.__, 133 S.Ct. 1911 (2013) with regard to Texas' rules governing ineffective assistance of counsel claims and may well apply by analogy to Louisiana cases.

In <u>Trevino</u>, the Court acknowledged the four-part test of <u>Martinez</u> for finding an exception to <u>Coleman</u>'s general rule that post-conviction counsel's errors cannot constitute "cause" for the procedural default of an ineffective assistance of trial counsel claim. <u>Id</u>. at 1918. The <u>Trevino</u> Court then focused on the 4th prong of this test relative to whether Texas law <u>required</u> the ineffective assistance claim to be addressed in initial-review collateral proceedings. The Court found that, although Texas law did not <u>expressly</u> <u>require</u> a defendant to raise a claim of ineffective assistance of trial counsel in an initial collateral review proceeding, Texas courts generally directed defendants to raise such claims on collateral, rather than on direct, review. <u>Id</u>. at 1919-20. Additionally, Texas procedure made it "virtually

25

impossible for appellate counsel to adequately present an ineffective assistance [of trial counsel] claim on direct review" as such a claim often "depend[s] upon evidence outside the trial record" and efforts to expand the record are difficult due to time constraints for filing an appeal. Id. at 1918.

Similarly, Louisiana law generally encourages defendants to bring issues of ineffective assistance of trial counsel in a post-conviction proceeding. "As a general rule, a claim of ineffective assistance of counsel is more properly raised in an application for post-conviction relief (PCR) in the trial court than by appeal; this is because PCR creates the opportunity for a full evidentiary hearing". State v. Clark, 107 So.3d 646, 651-52 (La. App. 2nd Cir. 2012). Accord State v. Bobo, 77 So.3d 1 (La. App. 2 Cir. 2011), writ denied, 76 So.3d 1202(La. 2011); State v. Ellis, 966 So.2d 139 42,520 (La. App. 2 Cir. 2007), writ denied, 978 So.2d 325 (La. 2008); State v. Griffin,838 So.2d 34, 40 (La. App. 4 Cir. 2003). See also State v. Prudholm, 446 So.2d 729, 737 (La. 1984) (noting that, when challenging the constitutional right to reasonably effective assistance of counsel, "a defendant's remedy is through [PCR] in the trial court where the quality of the attorney's assistance can be developed and explored"); State v. Joshua, 973 So.2d 963 (La. App. 2 Cir. 2008), writ denied, 992 So.2d 951(La. 2008)(explaining that the merits of ineffective assistance of counsel claims would not be considered on direct appeal since appellate record did not contain sufficient information and

26

post-conviction relief process was more appropriate process by which to review merits of such claims.)[34]

Furthermore, as is the case in Texas, Louisiana law requires a motion to appeal to be filed within a short period of time, i.e., thirty days of the judgment of conviction, and a party wishing to appeal must designate the portion of the transcript necessary to be prepared for the appeal at that time.[35]  Little time or opportunity is allowed to expand the record to develop a claim of ineffective assistance of trial counsel.

Based upon these similarities between Louisiana and Texas post-conviction procedures, it is likely that Hughes could satisfy the 4th prong of the test for application of an exception under Martinez, with regard to his first claim of ineffective assistance of counsel, i.e., that counsel failed to advise him of his rights under Alford.

However, Hughes cannot establish that his underlying claim of ineffective assistance of trial counsel is a "substantial" one, a showing which is required by the first prong of the Martinez test. The U.S. Supreme Court has stated that to satisfy the "substantial" requirement, a petitioner "must demonstrate that the claim[s]

_____

[34]However, when the record is sufficient, an ineffective assistance of counsel issue may be resolved on direct appeal in the interest of judicial economy. State v. Ratcliff, 416 So.2d 528, 530 (La. 1982); State v. Willars, 661 So.2d 673, 680 (La. App. 2 Cir. 9/27/95).

[35]LSA-C.Cr. P. arts. 914 and 914.1.

ha[ve] some merit..." <u>Martinez</u>, 132 S.Ct. at 1318.  This Hughes cannot do, as there is no evidence that an offer of an <u>Alford</u> plea was ever made during plea negotiations between Hughes' counsel and the prosecutor such that counsel should have informed Hughes about the possibility of an <u>Alford</u> plea. Additionally, there is no evidence that the court would have accepted an <u>Alford</u> plea from Hughes. A criminal defendant does not have an absolute right under the Constitution to have his guilty plea accepted by the court or to require the court to accept an <u>Alford</u> plea. <u>Santobello v. New York</u>, 404 U.S. 257, 262 (1971); <u>Alford</u>, 400 U.S. at 38 n. 11. In entering an <u>Alford</u> plea, a defendant waives his rights to a trial and accepts punishment but does not admit guilt.  Here, however, the  transcript of Hughes' guilty plea makes clear that Hughes admitted that he had committed the crimes to which he pled guilty. When asked by the court whether he understood that in pleading guilty, he was admitting to the crimes charged, Hughes answered in the affirmative.[36] Additionally, the court required that Hughes explain in his own words exactly what he did in committing each crime.[37]

---

[36]State Rec. vol. 2 of 2, Tab 14, Transcript dated 2/4/10 at p. 14.

[37]For example, Hughes gave factual details regarding his drug purchases, the exchange of money for drugs, and the dates and locations of each drug buy. State Rec. vol. 2 of 2, Tab 14, Transcript dated 2/4/10 at pp. 14-16.

Furthermore, since Hughes was sentenced pursuant to a plea bargain and was fully apprised of the sentence he would get if he pled guilty, he cannot show that he was prejudiced in his sentencing by entering a traditional guilty plea rather than an Alford plea. In sum, Hughes fails to establish that he had a constitutional right to render an Alford plea, he offers no evidence to support his claim that an Alford plea was even available to him, nor does he establish prejudice in his sentencing as a result of pleading guilty without an Alford plea. Thus, Hughes fails to establish that his claim that counsel was ineffective in failing to inform him about the implications of an Alford plea is a "substantial" claim which warrants application of the Martinez exception and excuses the default of this claim.

The application of Martinez to Hughes' second and third claims of ineffective assistance, however, differs substantially from that of his first claim.  In claims two and three, Hughes challenges his attorney's representation during his sentencing as a multiple offender. Yet unlike other types of claims of ineffective assistance of counsel, Louisiana law did not bar Hughes from raising on direct appeal his ineffective assistance of counsel claim regarding the habitual offender proceeding.  In fact, the opposite is true; Louisiana law required Hughes to assert on direct appeal his claim of ineffective assistance of counsel during the habitual offender proceeding and sentencing or be faced with a bar to its review if raised in a post-conviction application.

29

Louisiana's well-settled doctrine provides that La. Code Crim. P. art. 930.3 and cases following State ex rel. Melinie prohibit post-conviction review of challenges to sentencing errors, including those raising ineffective assistance of counsel during sentencing. State v. Thomas, 19 So.3d 466 (La. 2009); State v. Dauzart, 89 So.3d 1214, 1222 (La. App. 4th Cir. 2012) (ineffective assistance of counsel for failure to object to the failure to file the multiple bill into the record "must be addressed on appeal because sentencing errors are not reviewable post-conviction."); State v. Jones, 80 So.3d 500, 502 (La. App. 2d Cir. 2011) (same); see also, Wallace v. Cain, 2009 WL 3367052 at *14 (E.D. La. Oct. 15, 2009) (same as to claim of ineffective assistance of counsel during habitual offender proceeding) (order adopting report and recommendation of Moore, M.J.).

Instead, Louisiana law provides that sentencing errors, including ineffective assistance of counsel during sentencing, are to be raised on direct appeal. State v. Cotton, 45 So.3d 1030 (La. 2010); State v. Nelson, 2011 WL 9165413, at *1.   In State v. Cotton, the Louisiana Supreme Court explained that, under Louisiana law, "an habitual offender adjudication . . . constitutes sentencing for purposes of Melinie and La.C.Cr.P. art. 930.3, which provides no vehicle for post-conviction consideration of claims arising out of habitual offender proceedings, as opposed to direct appeal of the conviction and sentence." Id., at 1030.   The court reiterated that Louisiana law prohibits post-conviction review of

habitual offender proceedings, including claims of ineffective assistance of counsel related to that proceeding. Id., at 1030-31. In doing so, the court specifically indicated that such claims are appropriately considered on direct appeal, citing LSA-C. Cr.P. art. 912(C)(1), which provides for direct appeal of the judgment that imposes the sentence. Id., at 1031.

In this case, under state law, Hughes' initial opportunity to raise his claims of ineffective assistance of counsel at the multiple bill proceeding was during a direct appeal. See Holmes v. Cooper, 2013 WL 694073 *11 (E.D. La. 1/22/13)(Wilkinson, M.J.)(direct appeal was petitioner's initial opportunity to raise his claim of ineffective assistance of counsel at the multiple bill proceeding under Louisiana law), report adopted by 2013 WL 695352, at *1 (E.D.La. Feb 26, 2013)( Barbier, J.); Cotton v. Cooper, 2011 WL 5025311, at *11 (E.D. La. Sep. 14, 2011) (Moore, M.J.) ("Sentencing issues, including claims of ineffective assistance of counsel during sentencing, may be challenged in [Louisiana] state court via direct appeal."), report adopted by 2011 WL 5025295, at *1 (E.D. La. Oct. 21, 2011) (Africk, J.); State v. Nelson, 2011 WL 9165413, at *1 (La. App. 4th Cir. Apr. 27, 2011) (review of ineffective assistance of counsel at sentencing is to be considered on direct appeal since it is not available on post-conviction review); State v. Smith, 734 So.2d 826, 834-835 (La. App. 4th Cir. 1999) (addressing sentencing related ineffective assistance of

counsel on direct appeal); State v. Burns, 723 So.2d 1013, 1016-1017 (La. App. 4th Cir. 1998) (same).

There was no state law prohibiting Hughes from raising his sentencing-related ineffective assistance of counsel claim on direct appeal and, had he done so, consideration of the claim would not have been barred. See, e.g., State v. Dudley, 2012 WL 5383089, at *3-4 (La. App. 1st Cir. Nov. 2, 2012) (addressing on direct appeal merits of claim of ineffective assistance of counsel for failure to challenge validity of prior conviction at habitual offender adjudication); State v. Staden,2012 WL 1564592, at *11 (La. App. 1st Cir. May 3, 2012) (same); State v. Jones, 35 So.3d 1162, 1166-68 (La. App. 5th Cir. 2010) (same); State v. Jackson, 4 So.3d 131, 133-34 (La. App. 4th Cir. 2009) (same).

For these reasons, the Martinez ruling does not compromise or impact the procedural bar imposed upon Hughes' post-conviction claims for ineffective assistance of counsel during the multiple bill proceeding. His ability to raise the claim on direct appeal, precludes the equitable relief provided in Martinez and does not allow him to establish "cause" so as to excuse the procedural default of his second and third claims. See Holmes, 2013 WL 694073 *12 (petitioner's ability to raise the claim of ineffective assistance of counsel claim during the habitual offender proceeding on direct appeal precludes the equitable relief provided in Martinez);Banks v. Workman, 692 F.3d 1133 (10th Cir. 2012)

(<u>Martinez</u> does not apply where Oklahoma law permitted review of ineffective assistance of trial counsel claim on direct appeal).

"The failure to show 'cause' is fatal to the invocation of the 'cause and prejudice' exception, without regard to whether 'prejudice' is shown." <u>Hoque v. Johnson</u>, 131 F.3d 466, 497 (5th Cir. 1997) (citing <u>Engle v. Isaac</u>, 456 U.S. 107, 134 n. 43 (1982)). Having failed to show an external, objective cause for his default, the court need not determine whether prejudice existed. <u>Roberts</u>, 681 F.3d at 608 (citing <u>Coleman</u>, 501 U.S. at 750); <u>Finley</u>, 243 F.3d at 220 n .4; <u>Ratcliff v. Estelle</u>, 597 F.2d 474, 477 (5th Cir.1979) (citing <u>Lumpkin v. Ricketts</u>, 551 F.2d 680, 681–82 (5th Cir.1977)).

Hughes' first through third claims of ineffective assistance are therefore procedurally barred from review by this federal habeas corpus court, unless he can establish a fundamental miscarriage of justice would occur if the procedural default doctrine is applied to his claims.

### 3. Fundamental Miscarriage of Justice

Hughes may avoid application of the procedural bar only if a fundamental miscarriage of justice will occur if the merits of his claim are not reviewed. <u>Roberts</u>, 681 F.3d at 604; <u>Hoque</u>, 131 F.3d at 497 (citing <u>Sawyer</u>, 505 U.S. at 339). To establish a fundamental miscarriage of justice, petitioner must provide this court with evidence that would support a "colorable showing of factual innocence." <u>Kuhlmann v. Wilson</u>, 477 U.S. 436, 454 (1986); accord

<u>Murray</u>, 477 U.S. at 496; <u>Murray v. Quarterman</u>, 243 F. App'x 51, 55 (5th Cir.2007); <u>Bagwell</u>, 372 F.3d at 757.

The "[f]undamental miscarriage of justice exception 'is limited to cases where the petitioner can make a persuasive showing that he is actually innocent of the charges against him.' Proving such a claim is 'daunting indeed,' requiring the petitioner to show, 'as a factual matter, that he did not commit the crime of conviction.'" <u>McGowen v. Thaler</u>, 675 F.3d 482, 489 (5th Cir.), <u>cert</u>. <u>denied</u>, 133 S.Ct. 647, 648 (2012) (quoting <u>Finley</u>, 243 F.3d at 220; <u>Fairman v. Anderson</u>, 188 F.3d 635, 644 (5th Cir. 1999)). To satisfy the factual innocence standard, "the petitioner must support his allegations with new, reliable evidence that was not presented at trial and must show that it was more likely than not that no reasonable juror would have convicted him in the light of the new evidence." <u>Id</u>. at 500 (internal quotations omitted). Thus, this standard requires an "'extraordinarily high' 'threshold showing.'" <u>Id</u>. at 503 (quoting <u>Herrera v. Collins</u>, 506 U.S. 390, 417 (1993)). When the petitioner has not adequately asserted his actual innocence, his procedural default cannot be excused under the "fundamental miscarriage of justice" exception. <u>Murray</u>, 243 F. App'x at 55; <u>Bagwell</u>, 372 F.3d at 757; <u>Glover</u>, 128 F.3d at 903.

In this case, although Hughes generally proclaims that he is "innocent",[38] such a claim is belied by the fact that his conviction

---

[38]Rec. Doc. 14, Petitioner's Rebuttal at p. 6 of 9.

was secured through his own admission of guilt. Hughes does not present anything and the record contains nothing to suggest that he is actually innocent of the underlying convictions. Therefore, Hughes has failed to overcome the procedural bars to his first three claims, resulting in their dismissal with prejudice.

### C. Non-Cognizable Claim

With regard to Hughes' fourth and final claim, i.e., that his Fifth Amendment right to due process was violated by the trial court finding his post-conviction claims for relief to be procedurally barred, Hughes' complaints about the application of state procedural rules to bar his claims are not cognizable in this court. In evaluating the adequacy of the rules applied to bar a petitioner's claim, a federal habeas court does not sit to correct errors made by state courts in interpreting and applying state law. Narvaiz v. Johnson, 134 F.3d 688, 695 (5th Cir. 1998). Moreover, "a long line of cases from our circuit dictates that 'infirmities in the state's post-conviction procedures cannot serve as a basis for setting aside an otherwise valid conviction'". Rudd v. Johnson, 256 F.3d 317, 319-20 (5th Cir. 2001), citing Trevino v. Johnson, 168 F.3d 173, 180 (5th Cir.) (quoting Hallmark v. Johnson, 118 F.3d 1073, 1080 (5th Cir.1997)) (internal quotation marks omitted), cert. denied, 527 U.S. 1056, 120 S.Ct. 22, 144 L.Ed.2d 825 (1999);Nichols v. Scott, 69 F.3d 1255, 1275 (5th Cir.1995); Duff-Smith v. Collins, 973 F.2d 1175, 1182 (5th Cir.1992); Millard v. Lynaugh, 810 F.2d 1403, 1410 (5th Cir.1987); Vail v. Procunier,

747 F.2d 277, 277 (5th Cir.1984). That is because an attack on the state habeas proceeding is an attack on a proceeding collateral to the detention and not the detention itself. <u>Rudd</u>, 256 F.3d at 320; <u>Nichols</u>, 69 F.3d at 1275; see also, <u>Trevino</u>, 168 F.3d at 180; and, <u>Lackawanna County Dist. Attorney v. Coss</u>, 532 U.S. 394, 402-403 (2001) (no constitutional mandate that states provide post-conviction review) (citing <u>Pennsylvania v. Finley</u>, 481 U.S. 551, 557 (1987) (no constitutional right to state post-conviction review)). Since Hughes' final claim is beyond the scope of this court's habeas review, it must also be dismissed with prejudice.

Accordingly,

## III.  <u>RECOMMENDATION</u>

For the foregoing reasons, it is **RECOMMENDED** that Randy Hughes' petition for issuance of a writ of habeas corpus under 28 U.S.C. §2254 be **DISMISSED WITH PREJUDICE.**

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  <u>Douglass</u>

v. United Servs. Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir.1996)(<u>en banc</u>)(citing 28 U.S.C. §636(b)(1)).[39]

New Orleans, Louisiana, this 23rd day of ___December___, 2013.

_____
ALMA L. CHASEZ
UNITED STATES MAGISTRATE JUDGE

_____

[39]<u>Douglass</u> referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.